HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EMPLOYEE PAINTERS' TRUST, | CASE NO. C12-5648 RBL |
| Plaintiff, | ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| FISCHER GENERAL CONTRACTING, INC.; DANIEL FISCHER; TAMARA FISCHER; ELAINE FISCHER; and SUSAN JOHNSON, | [DKT. #21] |
| Defendants. | |

THIS MATTER is before the Court on Defendants Tamara Fischer, Elaine Fischer, and Susan Johnson's motion for summary judgment. [Dkt. #21]. In 2005, Daniel Fischer, acting as president and majority owner of Fischer General Contracting, Inc., signed a collective bargaining agreement with the International Union of Painters and Allied Trades District Council No. 5 ("IUPAT"). The CBA stipulated that for every hour a union painter worked for FGCI, FGCI had to pay a certain amount to the Employee Painters' Trust. FGCI avoided making these payments by regularly hiring non-union painters. The Trust alleges that FGCI was contractually obligated to only hire union painters and that it owes the Trust damages because it breached that duty.

FGCI is now defunct and Daniel Fischer has declared bankruptcy. Fischer's debt to the Trust was discharged. The Trust seeks damages from Susan Johnson, a former FGCI director[1]. Johnson asks the Court to find (1) that FGCI does not, as a matter of law, owe the Trust damages and (2) that Johnson cannot, as a matter of law, be held personally liable for FGCI's debt to the Trust.

## I. BACKGROUND

FGCI was a licensed general contractor incorporated in Washington in 2001. At incorporation, Fischer was FGCI's president and sole shareholder. At no time has he held less than 95.5% of FGCI's outstanding shares of stock.

When FGCI incorporated, Johnson was a director, a vice president, and the treasurer, but she received no compensation for her roles and rarely worked more than two days a week. Her main duty was to act as liaison to accountants and banks. She was not allowed to exercise discretionary authority; she did only what Fischer told her to do. She could sign checks on behalf of FGCI, but only when she received authorization from Fischer.

In 2005, Fischer signed the CBA on behalf of FGCI. Johnson did not sign the CBA and Fischer did not seek her approval or allow her to look over the CBA before signing. The CBA covered the period from March 2005 to February 2010. It obligated FGCI to pay a certain amount to the Trust for every hour it paid a union painter to work.

Later in 2005, Johnson received 150 shares of FGCI stock (1.5% of the outstanding shares) as a bonus.

When the CBA term ended in February 2010, IUPAT audited FGCI. It determined FGCI had hired non-union painters to perform many hours of work. It claimed this was a breach of the

---

[1] The Trust initially sought damages from Tamara Fischer, Elaine Fischer, and Susan Johnson, but it has conceded that Tamara Fischer and Elaine Fischer cannot be held personally liable for FGCI's failure debt to the Trust.

CBA and sought damages in an amount equal to what FGCI would have paid the Trust had it hired union painters to work those hours. Soon thereafter, Johnson resigned from her positions at FGCI, and FGCI repurchased her stock.

In 2012, FGCI lost its contractor's registration bond, and went out of business. Fischer filed for bankruptcy and obtained a discharge of his personal liability for FGCI's debt to the Trust. There is no plan to resurrect FGCI. Most of FGCI's assets were turned over to its lender, and the lender has a priority security interest in the rest.

On July 20, 2012, the Trust sued FGCI, alleging that FGCI owed $100,000 for the hours it paid non-union painters. It also claimed that Johnson was personally liable for the debt. The defendants ask this Court to determine as a matter of law that (1) FGCI does not owe the Trust any damages and (2) even if FGCI is liable to the Trust, Johnson is not personally liable.

## II. DISCUSSION

### A.  Summary Judgment Standard.

Summary judgment is appropriate if the facts, when viewed in the light most favorable to the nonmoving party, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of genuine issue of material fact, or asserting an absence of evidence supporting an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In opposing a motion for summary judgment, the non-moving party may not rely on its own pleadings, but rather must set forth facts that show the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**B.      FGCI owes the Trust damages because it hired non-union painters.**

**1.      FGCI breached its duty to only hire union painters.**

Art 5.1 of the CBA required FGCI to only subcontract to union employers.  It states:

> An Employer who is party to this Agreement shall not subcontract work covered
> by this Agreement to be done at a construction job site to any Employer unless
> such Employer is a party to a collective bargaining agreement with [IUPAT].

FGCI argues that this article actually prohibited FGCI from hiring union laborers.  It claims the CBA defined "Employer" to mean "Employer that has signed the CBA" and then claims that when that definition is plugged into Art. 5.1, it shows that FGCI was prohibited from hiring union organizations.  [Dkt. 21].  This argument fails for three reasons.

First, substituting "Employer that has signed the CBA" in for "Employer" does not cause Art. 5.1 to say that FGCI was prohibited from hiring union laborers; it makes the passage wildly redundant and nearly nonsensical (and under *Flynn v. Dick Corp*, the Court is never to presume that parties have included meaningless or redundant terms in their agreements.  481 F.3d 824, 831 (D.C. Cir. 2007)).  Second, applying this definition to the rest of the CBA turns several other passages into gibberish as well.  Third, the CBA's stated purpose is to increase business for union organizations.  This purpose is stated repeatedly throughout the contract so there is no way FGCI could have reasonably believed that Art. 5.1 discouraged FGCI from hiring union laborers.

Art. 5.1 shows that FGCI was required to hire union workers and FGCI freely admits that it regularly hired non-union workers.  Therefore FGCI breached its duty under the CBA.

**2.      FGCI owes damages in the amount of money equal to what the Trust
         would have received had FGCI hired union painters.**

The Court has ruled "where a union signatory breaches a prohibition on subcontracting contained in a [CBA], the union trust may recover the contributions that would have been made as damages for the beach."  *Brogan v. Swanson Painting Co.*, 682 F.2d 807, 809 (9th Cir. 1982).

This rule shows that the Trust is entitled to damages so the Court cannot find, as a matter of law, that FGCI does not owe the Trust damages.

### C. Susan Johnson is not personally liable for FGCI's debt to the Trust.

#### 1. Johnson cannot be personally liable because she did not sign the CBA and there is no reason to believe that she should have signed the CBA.

The Trust argues that "[w]here a written agreement so provides, corporate officers of a delinquent employer may be held liable for unpaid contributions." *Mencher v. Weiss*, 114 N.E.2d 177, 32 L.R.R.M. (BNA) 2539, 24 L.C. 67,797 (N.Y. 1953). It points to Art. VIII, § 8 of the CBA, which states:

> …in the event any corporate Participating Employer which is obligated to make contributions to the Trust fails to make such contributions, the President, the Treasurer, and any other corporate officer who is responsible for payment of contributions by the corporation to the Trust fund shall be each individually liable for the payment of contributions and any other due…

The Trust cites several cases where the Court held corporate officers personally liable for their corporations failing to meet similar CBA obligations. However, the cases are weak analogies; in every one of them, the officers held personally liable had accepted the liability either by signing a CBA or by promising to sign a CBA.

The Trust relies most heavily on *Emp. Painters' Trust v. Ethan Enterprises*. 480 F.3d 993, 1000-01 (9th Cir. 2007). In *Ethan*, the directors were held personally liable when their corporation breached the CBA, even though they did not sign it. But *Ethan* is entirely distinguishable from this case because the directors in *Ethan* had (1) promised to sign the CBA in 2004 and (2) been ordered to sign it by the Court in 2005. *N.L.R.B. v. Ethan Enterprises*, No. 04-74905, 154 Fed.Appx. 23 (9th Cir. 2005). When Ethan was sued again in 2007 and the directors tried to argue that they could not be personally liable because they had not yet signed the CBA, the Court quickly dismissed their argument. *Ethan Enterprises*, 480 F.3d at 1000.

Nothing like that happened in this case. Johnson never promised to sign the CBA and she was never ordered to sign it by the Court. Johnson did not sign it because she was not a particularly important FGCI employee. Therefore the Trust's effort to hold her personally liable as a signatory is unsupportable as a matter of law.

### 2. Johnson cannot be personally liable because she did not exercise actual control over plan assets.

To be a fiduciary under ERISA, a person must exercise "any authority or control respecting management or disposition of [plan] assets." 29 U.S.C. § 1002(21)(A)(i). However, the Ninth Circuit has determined that "[a] person…who performs only ministerial services or administrative functions within a framework of policies, rules, and procedures established by others is not an ERISA fiduciary." *Arizona State Carpenters' Trust Fund v. Citibank*, 125 F.3d 715, 722 (9th Cir. 1997). The Ninth Circuit has also determined that unpaid employer contributions may be considered plan assets when plan documents identify them as such. *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003).

The Trust claims that Johnson is personally liable because the unpaid contributions are plan assets[2], which Johnson had control over because she had signatory authority over FGCI's bank accounts[3]. However, both Johnson and Fischer insist that Johnson was only allowed to use her signatory authority when authorized by Fischer. The Trust has not even tried to contradict this claim. Since Johnson only did what Fischer told her to do, she was working within a framework that someone else established. Therefore she cannot be considered an ERISA fiduciary as a matter of law and she is not personally liable under this theory either.

---

[2] The CBA does identify unpaid contributions as plan assets so the Trust is correct on this point.
[3] It also argues that she "implemented FGCI's bookkeeping procedures," but this argument has been ignored because the "implementation" amounted to installing freely available bookkeeping software.

### III. CONCLUSION

FGCI's motion for determination as a matter of law that it owes no debt to the Trust is **DENIED**. Johnson's motion for a determination as a matter of law that she is not personally liable for FGCI's debt to the Trust is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 27th day of September, 2013.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE